O

# United States District Court
# Central District of California

| | |
|---|---|
| C.H. BELT AND ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> PASSPORT FOODS SVC, LLC et al., <br><br> Defendants. | Case № 8:23-cv-00410-ODW (JDEx) <br><br> **ORDER GRANTING ALEX SOLTANI'S MOTION TO SET ASIDE DEFAULT [26] & GRANTING IN PART AND DENYING IN PART C.H. BELT'S MOTION FOR DEFAULT JUDGMENT [22]** |

## I.   INTRODUCTION

Plaintiff C.H. Belt and Associates, Inc. ("C.H. Belt") moves the Court to enter default judgment against Defendants Passport Foods SVC, LLC ("Passport"), Skyview Capital Group Management, LLC ("Skyview Capital"), and Alex Soltani. (Mot. Default J. ("MDJ"), ECF No. 22.)  Soltani concurrently moves the Court to set aside the Clerk's entry of default against him.  (Mot. Set Aside Default ("MSAD"), ECF No. 26.)  For the reasons stated below, the Court **GRANTS** Soltani's Motion to Set Aside Default and **GRANTS IN PART AND DENIES IN PART** C.H. Belt's Motion for the Entry of Default Judgment.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are taken from C.H. Belt's Complaint.[2] (Compl., ECF No. 1.) Defendants were each engaged in the business of buying and selling perishable agricultural commodities. (*Id.* ¶ 19.) Defendant Passport operated under a Perishable Agricultural Commodities Act ("PACA") license, and Defendants Skyview Capital and Soltani served as the "Reported Principals" on Passport's PACA license. (*Id.* ¶¶ 3–6, 19.)

Between June 2, 2022, and August 2, 2022, in a series of transactions, C.H. Belt sold and shipped Passport perishable agricultural commodities in exchange for a sum of $134,316.90. (*Id.* ¶ 11.) Despite C.H. Belt sending Passport numerous invoices and making repeated demands for payment thereon, the invoices have gone unpaid. (*Id.* ¶¶ 12–13.)

On March 8, 2023, C.H. Belt filed its Complaint against Defendants alleging various PACA violations. (*See id.*) Specifically, C.H. Belt alleges: (1) against all Defendants: enforcement of PACA's statutory trust provisions, violation of PACA's requirement to account and promptly pay, breach of fiduciary duties, unjust enrichment, conversion, declaratory relief, and finance charges and recoverable attorneys' fees; (2) against Skyview Capital: negligent transfer and receipt of PACA trust assets, priority to PACA trust assets, breach of PACA trust, and disgorgement of PACA trust; and (3) against Passport: breach of contract. (*Id.*)

C.H. Belt served Passport and Skyview Capital on March 17, 2023, (Proofs of Service, ECF Nos. 7–8.), but neither defendant timely answered C.H. Belt's Complaint. On June 2, 2023, upon C.H. Belt's request, the Clerk of the Court entered default against both parties. (Entry of Default, ECF No. 13.)

After the Court ordered Plaintiff to show cause why the Court should not dismiss Soltani based on C.H. Belt's failure to serve him, (Order Show Cause

---

[2] Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability—with the exception of the allegations as to the amount of damages—are taken as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

("OSC"), ECF No. 14), C.H. Belt expressed significant challenges in serving Soltani with process, (*see* Decl. Bart Botta ISO OSC Resp. ("Botta Resp. Decl.") ¶¶ 7–14, ECF No. 15). In his declaration, Botta described eight different attempts to serve Soltani at three different addresses and accused Soltani of "actively using the front desk security at each of these buildings as a buffer for him to evade service." (*Id.*) Botta therefore asks the Court to accept the process server's July 5, 2023 Declaration of Service, which states that the relevant documents were left with "John Doe," a "security guard" at Skyview Capital's business address in Los Angeles, California. (*Id.* ¶ 12; Soltani Proof of Service, ECF No. 16.) On August 2, 2023, upon C.H. Belt's request, the Clerk entered default against Soltani. (Entry of Default ("Soltani Default"), ECF No. 20.)

C.H. Belt now moves for entry of default judgment against all Defendants. (*See* MDJ.) However, on September 21, 2023, Soltani appeared in this action for the first time, (Notices of Appearance, ECF Nos. 23–24), and Soltani now moves the Court to set aside the Clerk's entry of his default, (*see* MSAD).

### III. SOLTANI'S MOTION TO SET ASIDE DEFAULT

Considering that entry of default is a prerequisite for the entry of default judgment, *see generally* Fed. R. Civ. P. 55(b), the Court first considers Soltani's motion to set aside the Clerk's entry of default against him.

#### A. Legal Standard

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). District courts consider the following three factors to determine whether there is good cause to set aside the entry of default: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1109, 1111 (9th Cir. 2011) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). "Where timely relief is sought from a default . . . , doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may

be decided on their merits." *Mendoza v. Wight Vineyards Mgmt.*, 783 F.2d 941, 945–46 (9th Cir. 1986) (second alteration in original) (quoting *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974)).

**B.     Discussion**

Soltani contends there is good cause to set aside the entry of default because (1) setting aside Soltani's default would not prejudice C.H. Belt; (2) Soltani has meritorious defenses; and (3) Soltani's default was not willful, but rather due to mistake of fact and excusable neglect. (MSAD 4–8.)

1.     *Prejudice*

The Court first considers whether setting aside default will prejudice C.H. Belt. *See Brandt*, 653 F.3d at 1111. A plaintiff is prejudiced if its "ability to pursue [its] claim will be hindered." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). However, "[t]o be prejudicial, the setting aside of a [default] . . . must result in greater harm than simply delaying resolution of the case." *Id.*

Here, Soltani moved to set aside his default less than two months after the Clerk entered his default and less than one month after C.H. Belt moved for entry of default judgment. Beyond this delay, the record does not reflect that Soltani's default has caused any harm to C.H. Belt's ability to pursue its claims. C.H. Belt argues that setting aside default will prejudice it "by only further delaying Plaintiff's ability to collect the PACA trust assets." (Opp'n MSAD 8, ECF No. 28.) However, as discussed previously, delay alone is insufficient to constitute prejudice under *Brandt*. Accordingly, this factor weighs in favor of setting aside the entry of Soltani's default.

2.     *Meritorious Defenses*

The second factor asks the Court to consider whether Soltani raises meritorious defenses against C.H. Belt's claims. *See Brandt*, 653 F.3d at 1111. The defendant bears the burden to "present specific facts that would constitute a defense." *TCI*, 244 F.3d at 700. However, "the burden . . . is not extraordinarily heavy," *id.*, and the

defendant need only present "sufficient facts that, if true, would constitute a defense," *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010). A defense is considered meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Here, there is reasonable dispute as to whether Soltani is personally liable for Passport's breach of contract. Persons who are in positions to control assets of the PACA trust, and who have breached their fiduciary duty to preserve those assets, may be held personally liable under PACA for that breach. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997); *see also Golman-Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) ("[W]e join our colleagues in the Ninth Circuit and hold that individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA."). However, to be held personally liable, the defendant must be "in a position to control PACA trust assets." *Sunkist Growers*, 104 F.3d at 283.

C.H. Belt alleges that Soltani is listed as Skyview Capital's "Founder, Chairman & CEO." (Opp'n MSAD 5.) Based on that fact, C.H. Belt contends that Soltani maintained control over the PACA trust, (*see* Compl. ¶ 7), but it is not clear from the specific facts alleged that Soltani's title and role as Passport's "Registered Principal" necessarily indicates that he possesses control over the PACA trust sufficient to render him personally liable under PACA. If the facts that Soltani presents are true—that he was not in a position to control the PACA trust—they would be sufficient to constitute a defense to the claims that C.H. Belt brings against him. Although the Court cannot, at this time, determine whether Soltani's defense will ultimately succeed, that conclusion is not necessary for this dispute to constitute a potentially meritorious defense. Therefore, this factor also favors setting aside Soltani's default.

### 3.  *Culpability*

Finally, the Court considers whether Soltani engaged in culpable conduct leading to the entry of default.  *See Brandt*, 653 F.3d at 1111.  A defendant "is culpable if [it] has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith . . . ." *Mesle*, 615 F.3d at 1092.  Even a neglectful failure to answer is not necessarily culpable if the defendant "offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *TCI*, 244 F.3d at 697.  Ultimately, a defendant's "careless failure to timely respond to a complaint does not rise to the level of intentional, culpable conduct unless other equitable factors weigh heavily against setting aside a default." *Whitaker v. GGET Larchmont LLC*, No. 2:19-cv-09411-DMG (JCx), 2020 WL 1972291, at *2 (C.D. Cal. Mar. 17, 2020) (citing *Mesle*, 615 F.3d at 1092).

Here, the Court looks to the effectiveness of Soltani's service.  As described previously, C.H. Belt served Soltani by leaving the necessary documents with "John Doe," a "security guard" at Skyview Capital's business address in Los Angeles, California.  (Soltani Proof of Service 1.)  Having reviewed the Declaration of Service, the Court finds that the process may not be legally adequate because it is unclear that the "John Doe" "security guard" qualifies as "a person apparently in charge of [Soltani's] office." *See* Cal. Code Civ. Proc. § 415.20(b) (stating that if personal service cannot be completed with reasonable diligence, substituted service may be effectuated by "leaving a copy of the summons and complaint at the person's . . . usual place of business . . . in the presence of . . . a person apparently in charge of his or her office").  This potential insufficiency casts reasonable doubt on whether Soltani

was aware of this lawsuit at the time of his default. Applying the standards set forth in *Albright* and *Mesle*, it is not clear that Soltani acted in bad faith, and, thus, this factor weighs further in favor of setting aside the entry of default.

In conclusion, the Court finds all three of the relevant factors weigh in favor of setting aside the entry of default. Accordingly, the Court **GRANTS** Soltani's Motion to Set Aside Entry of Default.[3]

## IV. MOTION FOR DEFAULT JUDGMENT

The Court next considers C.H. Belt's Motion for Default Judgment against Soltani, Skyview Capital, and Passport. (MDJ.)

### A. Legal Standard

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Fed. R. Civ. P. 55(b). However, before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Cemtral District Local Rules 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1, 55-2. If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment.").

---

[3] In support of its Motion for Default Judgment, C.H. Belt argues that "Soltani's efforts to delay this legal process has caused Plaintiff to incur additional attorney's fees to respond." (Reply ISO MDJ 9, ECF No. 27.) C.H. Belt argues that it is therefore "entitled to recover additional attorney's fees incurred in preparing this Opposition and other pleadings." (*Id.*) Having considered the propriety of conditioning the setting aside of Soltani's default on a payment of C.H. Belt's reasonable attorneys' fees and costs, the Court deems such a condition to be improper in this case. This conclusion is driven by two primary considerations: (1) despite C.H. Belt's reasonable efforts to serve Soltani with process, the record does not clearly indicate that Soltani was aware of this lawsuit, was intentionally avoiding this litigation, or that he acted in bad faith; and (2) C.H. Belt was on notice as of September 21, 2023 that Soltani was represented by counsel and was intending to appear to defend this case on the merits. To the second point, despite C.H. Belt's awareness of Soltani's intentions, C.H. Belt declined to enter a stipulation setting aside Soltani's entry default. (See Decl. James V. Fazio ISO Opp'n Att'y Fees ¶ 2, ECF No. 37-1.) Accordingly, the Court denies C.H. Belt's request to award it additional attorneys' fees.

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court need not make detailed findings of fact in the event of default, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). Thus, the plaintiff is required to provide proof of all damages sought in the complaint.

**B.  Discussion**

As a preliminary matter, because the Court has granted Soltani's motion to set aside default, the Court **DENIES AS MOOT** C.H. Belt's motion for entry of default judgment as to Soltani. Accordingly, the Court only considers whether entry of default judgment is appropriate as to Defendants Passport and Skyview Capital.

1.  *Procedural Requirements*

Central District Local Rule 55-1 establishes that parties moving for default judgment must submit a declaration establishing (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party "[i]f the party against whom a default judgment is sought has appeared personally or by a representative." Fed. R. Civ. P. 55(b)(2).

Here, C.H. Belt has submitted a declaration stating that the default was entered as to its Complaint against Passport and Skyview Capital on June 2, 2023. (Decl. Bart Botta ISO MDJ ("Botta MDJ Decl."), ECF No. 22-5.) As Passport and Skyview Capital are entities, not natural persons, the third and fourth requirements do not apply. Furthermore, Rule 55(b)(2) does not require written notice of the application for default judgment here because neither Passport nor Skyview Capital has appeared

personally or by representative. Accordingly, C.H. Belt has satisfied the procedural requirements necessary to merit the entry of default judgment.

### 2. *Eitel* Factors

In exercising discretion in whether to enter default judgment, courts consider the "*Eitel* factors": (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).

#### a. The Possibility of Prejudice

A plaintiff is prejudiced if, absent the entry of a judgment, he will be left without a remedy. *See PepsiCo*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Passport and Skyview Capital failed to participate in the litigation after being served. C.H. Belt will be prejudiced absent an entry of a judgment because there would be no other remedy available to it. Therefore, the first *Eitel* factor weighs in favor of granting the motion.

#### b. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors overlap because a plaintiff must properly state a claim and the allegations in the complaint are deemed true. Thus, if the complaint is sufficient, a plaintiff's substantive claim has merit for purposes of a request for the entry of a default judgment. *PepsiCo*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (allegations in the complaint must state a claim upon which the plaintiff may recover).

In 1930, Congress enacted PACA to promote fair trading practices in the produce industry. *See* 7 U.S.C. § 449a *et seq.*; *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1223–24 (9th Cir. 2002). Under PACA, it is unlawful for buyers of produce to fail to make prompt payments for a shipment of produce. *See* 7 U.S.C. § 499b(4). In 1984, Congress amended PACA to further protect unpaid suppliers of produce by creating a statutory trust provision. *See Middle Mountain*, 307 F.3d at 1223–24. Whereas unpaid produce suppliers were previously merely unsecured creditors before the 1984 amendment, under the updated statutory provision, a buyer's produce, products derived from that produce, and the proceeds gained therefrom are held in a non-segregated, floating trust for the benefit of the unpaid suppliers who have met the applicable statutory requirements. *See* 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46(b). Thus, the 1984 amendment provides certain unpaid sellers of produce an interest in the trust assets superior to that of a perfected, secured creditor of a bankrupt estate. *Middle Mountain*, 307 F.3d at 1224. It also permits the "commingling of trust assets without defeating the trust." *S&H Packing & Sales Co., Inc. v. Tanimura Distrib., Inc.*, 888 F.3d 797, 802 (9th Cir. 2018) (quoting *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995)).

To establish the trust, produce sellers must take certain steps to preserve their right to benefit from the trust. The PACA claimant must demonstrate that (1) the produce in question must be "perishable agricultural commodities"; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due. 7 U.S.C. § 499e(c)(3); *see also In re Symons Frozen Foods Inc.*, 425 B.R. 589, 594 (Bankr. W.D. Wash. 2010).

In this case, C.H. Belt alleges that it sold and shipped perishable agricultural commodities to Passport. (Compl. ¶ 11.) C.H. Belt further alleges that Passport was

engaged in the handling of produce as a commission merchant, dealer and/or retailer in wholesale jobbing quantities by maintaining a valid PACA license. (*Id.* ¶¶ 9–10.) Finally, C.H. Belt alleges that it provided Passport with written notice of Plaintiff's intent to preserve its PACA trust rights on the face of each invoice. (*Id.* ¶¶ 21–22.) The written notice, which C.H. Belt forwarded to Passport at or about the date of each transaction, reads as follows:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(*Id.* ¶¶ 12, 22.) C.H. Belt properly pleads the requirements to establish a PACA trust against Passport under 7 U.S.C. § 499e.

Regarding Skyview Capital, C.H. Belt asserts that Skyview Capital is a reported principal on Passport's PACA license and in a position to control the PACA trust assets underlying this lawsuit. (Compl. ¶ 5.) Persons in a position to control PACA trust assets, and who have breached their fiduciary duty to preserve those assets, may be held personally liable under PACA for that breach. *Sunkist Growers*, 104 F.3d at 283. Accordingly, C.H. Belt also establishes a PACA trust against Skyview Capital.

A PACA trustee is charged with preserving the rights of trust beneficiaries "by making sure that PACA trust assets . . . are not dissipated." *S&H Packing*, 883 F.3d at 811. "The duty to maintain trust assets is far-reaching. Federal regulation dictates that '[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA].'" *Id.* at 803 (quoting 7 C.F.R. § 46.46(d)(1)). "'Dissipation' means any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the

ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." *Id.* (quoting 7 C.F.R. § 46.46(a)(2)).

Here, C.H. Belt pleads that Passport and Skyview Capital breached their fiduciary duties to preserve the PACA trust when they "transferred or diverted the trust assets, and are continuing to so transfer or divert trust assets, namely receivables or proceeds derived from Defendants' sale of produce, to their own use and/or to an unknown third party or parties." (Compl. ¶ 27; *see also id.* ¶¶ 30, 48, 68.) "The Ninth Circuit requires 'strict compliance' with the PACA trust provisions in order to preserve PACA trust rights." *Produce Pay, Inc. v. Promoate Produce U.S.A., Inc.*, No. 2:16-cv-08047-R (PLAx), 2017 WL 10636409, at *2 (C.D. Cal. Jan. 31, 2017) (quoting *In re Enoch Packing Co., Inc.*, 386 Fed. App'x 611, 613 (9th Cir. 2010)). C.H. Belt sufficiently alleges that Passport and Skyview Capital both breached that duty here. Accordingly, C.H. Belt establishes that Passport and Skyview Capital violated their duties under 7 U.S.C. § 499e when they failed to promptly pay C.H. Belt for the produce they purchased.

In its Motion for Default Judgment, C.H. Belt does not, in any way, address or engage with its non-PACA claims against Passport and Skyview Capital. The Court therefore finds that the allegations are sufficient to support the second, third, and eleventh causes of action against both Passport and Skyview Capital. The allegations are also sufficient to support the seventh, eighth, ninth, and tenth causes of action against Skyview Capital. Because C.H. Belt failed to engage with any of the elements of the other causes of actions, the Court finds that the allegations are not sufficient to support either the first, fourth, fifth, sixth, or twelfth cause of action. Thus, the second and third *Eitel* factors—the merits of C.H. Belt's substantive claims and the sufficiency of its complaint—weigh in favor of granting the Motion for Default Judgment as to the causes of action for which the allegations are sufficient.

          c.    <u>The Sum of Money at Stake in the Action</u>

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 3d at 1176; *see also Eitel*, 782 F.2d at 1472 (in light of parties' dispute as to material facts, entry of $3 million judgment would not be appropriate).

C.H. Belt seeks to recover $134,316.90 for unpaid invoices, at least $30,075.73 in prejudgment interest, $29,647.50 in attorney's fees, and $1,057.50 in costs. (MDJ 9.) The damages are consistent with Plaintiff's allegations of harm. The issue of damages is separately addressed below. Therefore, this factor weighs in favor of granting the Motion.

          d.    <u>The Possibility of Dispute Concerning Material Facts</u>

The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to damages. *TeleVideo Sys.*, 826 F.2d at 917–18. Although defendants could possibly dispute some or all of the material facts in the course of litigation, their failure to appear and defend shows that their success in seeking to do so is unlikely. The facts underlying this action are also relatively straightforward. Therefore, the fifth *Eitel* factor weighs in favor of granting the Motion for Default Judgment.

          e.    <u>Whether the Default was Due to Excusable Neglect</u>

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect of the non-moving party. Defendants were properly served with the summons and Complaint, but they failed to respond. Default was then entered by the Clerk. At no time have Defendants appeared to present a defense. There is no evidence that their failure to respond to the Complaint or otherwise appear in this action was due to excusable neglect. Therefore, this factor weighs in favor of granting the Motion for Default Judgment.

### f. The Strong Policy Favoring Decisions on the Merits

The final *Eitel* factor considers the strong policy preference of deciding claims on the merits. This factor generally disfavors the entry of default judgment. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal citation and quotation marks omitted). Further, a defendant's decision not to defend the action precludes a decision on the merits. Therefore, although this factor weighs against granting the Motion for Default Judgment, it does not require that result. A contrary rule would mean that a default judgment could rarely, if ever, be entered.

### g. Conclusion

Based on a review and balancing of the *Eitel* factors, the Court **GRANTS** the Motion for Default Judgment as to the claims that have been adequately alleged.

### 2. *Proof of Damages*

Finally, as allegations related to damages are not deemed true upon default, *TeleVideo Sys.*, 826 F.2d at 917–18, a party seeking default judgment must prove their damages, *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp 3d 1141, 1148 (D. Or. 2016). "[D]istrict courts within the Ninth Circuit have required plaintiffs to prove . . . compensatory damages with 'reasonable certainty' even in situations of default." *Rubicon*, 226 F. Supp. 3d at 1149.

Here, C.H. Belt seeks five categories of damages: (1) principal in the amount of $134,316.90; (2) prejudgment interest charges through and including October 16, 2023, in the amount of $30,075.73 (and continuing to accrue at a daily rate of $66.24 thereafter); (3) attorneys' fees of $29,647.50; (4) recoverable costs of $1,057.00, and (5) post-judgment interest charges at the federal rate on all unpaid principal sums due, until fully paid. (Botta MDJ Decl. ¶ 22.) The Court considers each category of damages in turn.

### a. Principal Damages

First, Rule 54(c) permits the recovery of damages when there is no material difference between the relief sought in the complaint and through default judgment. *See Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974). The plaintiff is required to prove all damages. To determine whether the plaintiff has met its burden in connection with a request for a default judgment, a court may rely on the evidence submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

In support of its claim for damages, C.H. Belt provides supporting declarations and copies of the unpaid invoices. (*See* Decl. Robert Eggert ISO MDJ ("Eggert Decl."), ECF No. 22-2.) In his Declaration, Eggert submits to the Court the unpaid invoices confirming C.H. Belt's sales to Passport, verifies their authenticity, and declares that C.H. Belt has not received payment for the outstanding balance. (*Id.* ¶¶ 6, 8, Ex. A.) The four invoices—dated July 1, 2022, July 31, 2022, August 1, 2022, and August 27, 2022—total $134,416.90. This sum is equal to both the amount that C.H. Belt seeks in its Complaint and the one it seeks in its Motion for Default Judgment. (*See* Compl. ¶ 11; MDJ 9). The evidence is sufficient to establish the amount of damages as $134,416.90.

### b. Prejudgment Interest

Turning next to prejudgment interest, "courts have uniformly agreed that a district court has broad discretion to award prejudgment interest to PACA claimants under § 499e(c)(2)." *Middle Mountain*, 307 F.3d at 1225–26; *see id.* at 1226 ("[A] district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants.")

The invoices that C.H. Belt sent to Passport state that "[i]nvoices that are past due are subject to . . . a monthly finance charge of 1.5% (18% per year) that will be applied to all past due invoices." (Eggert Decl. Ex. A.) Through their business relationship, the parties entered into contracts whose terms are set forth in the operative invoices. There was no objection to these terms. Although interest

normally accrues at the legal rate, parties may contractually agree to a higher rate. Here, the agreed-upon interest rate of 18% on unpaid accounts is the proper rate to apply to Defendants' past-due balance. An award of prejudgment interest is appropriate, and it restores C.H. Belt to the position it would have held absent the breach. Thus, C.H. Belt is entitled to a prejudgment interest of $30,075.73 through October 16, 2023, plus an additional $7,948.80 for the amount accrued since the date C.H. Belt filed its motion.

### c. Attorneys' Fees

As a general matter, district courts only award attorneys' fees if an independent basis exists for the award. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–59 (1975). In PACA cases, the Ninth Circuit has held that a contractual claim for attorneys' fees is properly within the scope of a PACA trust claim. *Middle Mountain*, 307 F.3d at 1225–26. Furthermore, the invoices between the parties state, "should any action be commenced between he parties to this contract concerning the sums due . . . , the prevailing party shall be entitled to . . . an award for the actual attorney's fees and costs in bringing the action and/or enforcing any judgment granted in the action." (Eggert Decl. Ex. A.)

Under Local Rule 55-3, for judgment amounts over $100,000, "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated" as "5,600 plus 2% of the amount over $100,000." C.D. Cal. L.R. 55-3. This formula "shall be applied to the amount of the judgment exclusive of costs." *Id.*

Plaintiff seeks to recover $134,416.90 in principal damages and $30,075.73 in prejudgment interest, yielding a total of $164,492.63. This formula yields a total amount of attorneys' fees of $6,889.85.

### d. Costs

Plaintiff seeks $1,057.00 in costs. (MDJ 9.) This amount consists of the Complaint filing fee ($402.00) and process server fees ($655.00). Considering that

the Motion for Default Judgment is only being granted as to Passport and Skyview Capital, the Court will only award service fees associated with those Defendants. The fee C.H. Belt paid to serve Passport was $95.00, (Decl. Service, ECF No. 7), and the fee to serve Skyview Capital was $50.00, (Decl. Service, ECF No. 8). The Court will therefore award C.H. Belt $547.00 in costs.

### e. Post-Judgment Interest

Lastly, C.H. Belt requests "[p]ost-judgment interest charges at the federal rate on all unpaid principal sums due, until fully paid." (MDJ 9.) Federal statute provides for post-judgment interest on any money judgment in a civil case recovered in a district court. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, the Court awards post-judgment interest at the statutory rate mandated by 28 U.S.C § 1961, which is 4.84%.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Alex Soltani's Motion to Set Aside Entry of Default. (ECF No. 26.) Soltani shall respond to C.H. Belt's Complaint no later than **fourteen days** from the date of this Order.

Furthermore, the Court **DENIES AS MOOT** C.H. Belt's Motion for Default Judgment as to Alex Soltani and **GRANTS IN PART** the Motion for Default Judgment as to Defendants Passport and Skyview Capital for the causes of action that C.H. Belt sufficiently plead. (ECF No. 22.) A judgment shall be entered awarding the following:

(i) Principal damages in the amount of $134,416.90.

(ii) Pre-judgment interest in the amount of $7,948.80.

(iii) Attorneys' fees in the amount of $6,889.85.

(iv) Costs in the amount of $547.00.

(v) Post-judgment interest at the rate called for by 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

February 20, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**